UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| NANCY R., | ) | Case No. SA CV 17-434-SP |
|       Plaintiff, | ) | |
|       v. | ) | MEMORANDUM OPINION AND ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, | ) | |
|       Defendant. | ) | |

## I.

## __INTRODUCTION__

On March 13, 2017, plaintiff Nancy R. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents four disputed issues for decision that can be characterized as the following three: (1) whether the administrative law judge ("ALJ") properly

1

considered the credibility of plaintiff's subjective complaints; (2) whether the ALJ properly considered the opinions of plaintiff's treating physicians; and (3) whether the ALJ erred at step two. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 1-12; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-15.

Having carefully studied the parties' memoranda on the issues in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ failed to properly assess plaintiff's subjective complaints, failed to properly consider one treating physician's opinion, and failed to properly consider evidence of migraines at step two. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated herein.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff was sixty-two years old on the alleged disability onset date and has a law degree. AR at 54, 91. Plaintiff has past relevant work as a supervising attorney. *Id*. at 86-87.

On July 10, 2014, plaintiff filed an application for a period of disability and DIB, alleging an onset date of March 5, 2014 due to rheumatoid arthritis and osteoarthritis. *Id*. at 91. The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing. *Id*. at 110-13, 117-23.

Plaintiff, represented by a non-legal representative, appeared and testified at a hearing before the ALJ on August 4, 2015. *Id*. at 49-90. The ALJ also heard testimony from David Rinehart, a vocational expert. *Id*. at 85-89. On September 25, 2015, the ALJ denied plaintiff's claim for benefits. *Id*. at 38-44.

Applying the well-known five-step sequential evaluation process, the ALJ

found, at step one, that plaintiff had not engaged in substantial gainful activity since March 5, 2014, her alleged disability onset date. *Id.* at 40.

At step two, the ALJ found plaintiff suffered from the following severe impairments: degenerative disc disease of the cervicothoracic spine; chronic pain syndrome; rheumatoid arthritis; and lumbar spine strain. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.*

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined she had the RFC to perform light work, with the limitations that she could: frequently use hand controls bilaterally; occasionally perform postural activities; occasionally perform above-the-shoulder reaching bilaterally; and frequently handle and finger bilaterally. *Id.* at 41. The ALJ also determined plaintiff should avoid concentrated exposure to extreme cold, vibration, fumes, odors, dust, gases, and poor ventilation. *Id.*

The ALJ found, at step four, that plaintiff could perform her past relevant work as a supervising attorney. *Id.* at 43. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.*

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council on February 17, 2017. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

# III.
# **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

# IV.

# DISCUSSION

**A.** <u>**The ALJ Failed to Properly Assess Plaintiff's Subjective Complaints**</u>

Plaintiff argues the ALJ failed to properly assess the credibility of her subjective complaints. P. Mem. at 1-7. Specifically, plaintiff contends the reasons the ALJ cited for discounting her testimony were not clear and convincing and supported by substantial evidence. *Id*.

The ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p.[2] To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Benton v. Barnhart*, 331 F.3d 1030, 1040-41 (9th Cir. 2003). The ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily

---

[2] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 41. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. The ALJ found plaintiff's testimony to be not entirely credible because her alleged symptoms were: (1) inconsistent with her treatment history; (2) inconsistent with her activities of daily living; and (3) inconsistent with the objective medical evidence. *Id*. at 41-42.

At the hearing, plaintiff testified that she suffered from rheumatoid arthritis, migraines, neck pain and spasms, lower back pain, and hip pain. *Id*. at 59, 63, 65-68. Plaintiff testified that sitting aggravated her pain and the pain triggered her migraines. *Id*. 63-69. Although physical therapy and other exercises helped, she still had pain. *Id*. at 67-68. When sitting with the correct posture on the correct chair at an ergonomic table, plaintiff could sit and read for about an hour before pain would radiate in her neck and she would need to get up and move around. *Id*. at 74-75, 80-81. Plaintiff explained that sitting with correct posture reduced the pain but she got fatigued holding that position. *Id*. at 83. Plaintiff further testified that she could lift twenty pounds but only ten pounds comfortably, walking a long time affected her feet, and she could reach above with pain but could not grasp everything. *Id*. at 73, 76, and 81-82. As for her activities, plaintiff exercised on a daily basis, attended a few lectures, cooked, read, and shopped for food. *Id*. at 77-79. Plaintiff explained she used to garden and hand weave but had to reduce both activities due to her symptoms. *Id*. at 79.

In an undated Function Report, plaintiff stated that her neck pain most significantly impacted her ability to work because it caused her to change positions

6

frequently, have migraines, and affected her focus and concentration. *Id*. at 250. Plaintiff, among other things, had to be careful when she lifted items, could only squat slowly, fatigued easily when she walked, could only sit about twenty minutes at a time, and experienced pain and stiffness in her hands if she used them too much. *Id*. at 256. As for her activities, plaintiff reported that she prepared simple meals such as salads and sandwiches, did small loads of laundry, washed dishes once a week, read the newspaper with multiple breaks, wove twice a week with breaks every thirty minutes, gardened once a week for about fifteen minutes, and attended a weaving club meeting twice a month. *Id*. at 252-55.

The ALJ's first reason for finding plaintiff's testimony less credible was that her alleged symptoms were inconsistent with her treatment history, which showed effective treatment. *Id*. at 42; *see Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (response to treatment supports an adverse credibility determination). Specifically, the ALJ noted that plaintiff met her goals by the completion of physical therapy, reported no pain or further limitations following therapy for spinal mobility, reported to her treating physician that she was doing better and able to live with her pain level, and reported a pain level of 0/10 in June 2015. AR at 42. Although the ALJ correctly noted that plaintiff achieved her goals at physical therapy and had no pain at many of the sessions, the ALJ's determination that plaintiff's symptoms were inconsistent with the treatment notes was nevertheless not clear and convincing because it was based on a selective reading of the treatment notes.

Since the alleged onset date, plaintiff underwent three sessions of physical therapy – a session in 2014 for the mobility deficits in her right hip and lumbar spine and sessions in 2014 and 2015 for mobility deficits related to her thoracic

and cervical spine.³ *See id.* at 331-34, 340-43, 537-39. With regard to plaintiff's lumbar and hip pain, plaintiff was discharged from physical therapy after achieving her goal – to be able to sit with proper lumbar spine positioning for one hour. *See id.* at 338-39. As for plaintiff's cervical and thoracic spine, plaintiff was discharged from physical therapy in 2014 after having met her goals of being able to sit with proper posture for reading for two hours and being able to sleep at night without waking although with some pain. *See id.* at 349. Plaintiff was again referred to physical therapy in 2015 because she continued to suffer from neck pain, she developed pain in her left upper trapezius, headaches/migraines resulted from the pain, and she could not sit at a computer for fifteen minutes. *See id.* at 537-38. Although plaintiff had no pain during a June 2015 physical therapy session and reported that her neck pain would go away when she sat with correct posture, she also reported she could only maintain proper posture for short periods. *See id.* at 685-86.

     Looking at the treatment notes as a whole, they were not inconsistent with plaintiff's symptoms. First, with regard to plaintiff's hip and lumbar spine, the physical therapy was successful but the goal was simply for plaintiff to be able to sit for one hour. *See id.* at 338-39. The ability to sit for one hour was consistent with plaintiff's testimony and did not demonstrate full functionality. Similarly, with respect to plaintiff's neck pain, plaintiff achieved her goal of being able to sit for two hours in 2014. But plaintiff continued to experience pain at times when sitting, which eventually required her to undergo more physical therapy in 2015. And even though plaintiff did not have pain during many of the physical therapy sessions, she continued to experience incidences of neck pain and was unable to sit with postural endurance for longer periods. *Id.* at 685-86. Accordingly, even

---

    ³ Prior to 2014, plaintiff had undergone physical therapy an unknown number of times. *See* AR at 304, 310-11.

8

though plaintiff's physical therapy was technically effective, the goals were very limited and the treatment notes indicate plaintiff was not always pain-free. Plaintiff continued to suffer from limitations and required additional physical therapy. Contrary to the ALJ's assessment, these documented limitations were consistent with plaintiff's testimony.

The ALJ's second reason for his adverse credibility determination was that plaintiff's activities of daily living were inconsistent with her symptoms. *Id*. at 42; *see Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (in making a credibility determination, an ALJ may consider inconsistencies between a claimant's testimony and conduct). The ALJ found that plaintiff's ability to exercise – yoga, swimming, and walking – as well as travel to Japan indicated that her symptoms were not as limiting as she testified. AR at 42. Plaintiff's physical therapist prescribed exercise in order to alleviate the pain. *See, e.g.*, AR at 73, 304, 335. The fact that plaintiff was exercising to adhere to her treatment plan and alleviate the pain was therefore not a clear and convincing reason to discount her alleged symptoms.

Similarly, plaintiff's trip to Japan was not a clear and convincing reason to find her less credible. *See Wilson v. Comm'r*, 303 Fed. Appx. 565, 566 (9th Cir. 2008) (fact that plaintiff went on a vacation was not a clear and convincing reason to discount her credibility). Plaintiff was not traveling on a regular basis and this was not an activity-filled vacation. Instead, she made an extended visit to Japan to visit friends. AR at 84. During this visit, plaintiff did not go sight seeing and instead would just walk around a bit each day and socialize with friends. *Id*. The trip did not suggest that plaintiff's abilities were greater than she alleged. *See Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir. 1986) (the capacity to engage in periodic, restricted travel was not a clear and convincing reason to find plaintiff less credible); *but see Tommasetti*, 533 F.3d at 1040 (plaintiff's ability to travel to

9

Venezuela to care for her ailing sister was a clear and convincing reason to discount her credibility).

Finally, the ALJ discounted plaintiff's credibility because her symptoms were unsupported by objective medical evidence. AR at 42; *see Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (lack of corroborative objective medical evidence may be one factor in evaluating credibility). Acknowledging that diagnostic images reflected degenerative spinal changes, the ALJ nevertheless determined the objective medical evidence did not support plaintiff's claims because there was no evidence of stenosis, other nerve impact, or significant neurologic deficits aside from a slight loss of grip strength.[4] AR at 42. The ALJ was incorrect. An April 2011 MRI of the cervical spine showed that plaintiff suffered from multilevel disc and facet degenerative changes and multilevel foraminal stenosis, and an October 2013 x-ray showed multilevel degenerative disc disease and anterior superior flattening of the superior endplate of C5. *Id*. at 286, 308. Indeed, one of the State Agency physicians, whose opinion the ALJ assigned great weight, stated the diagnostic images showed plaintiff suffered from "fairly significant" degenerative disc disease and multilevel foraminal stenosis. *Id.* at 93. Thus, although there was no objective medical evidence supporting significant neurologic deficits, the diagnostic images clearly reflected conditions that supported plaintiff's complaints.

In sum, the ALJ's three reasons for finding plaintiff's testimony not entirely credible were not clear and convincing and supported by substantial evidence. As such, the ALJ erred in discounting plaintiff's subjective complaints.

---

[4] Defendant suggests diagnostic images taken prior to the alleged onset date were not relevant to the discussion. *See* D. Mem. at 4, 14. These images were not so remote in time as to provide no guidance.

10

B. **The ALJ Failed to Properly Consider the Opinion of One of Plaintiff's Treating Physicians**

Plaintiff argues the ALJ failed to properly consider the opinions of her two treating physicians, Dr. Patricia S. Hong and Dr. Randy Richard Lehmer. P. Mem. at 7-10. Specifically, plaintiff contends that the ALJ discounted both their opinions without providing specific and legitimate reasons. *Id.*

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. § 404.1527(b).[5] In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 404.1527(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan*, 246 F.3d at 1202; 20 C.F.R. § 404.1527(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen*, 80 F.3d at 1285; *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide

---

[5] All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

11

specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

### 1. **Treating Physicians**

Dr. Patricia S. Hong, a physiatrist, treated plaintiff from September 2013 through the date of the hearing. *See* AR at 304-07, 527-31. At the initial visit, Dr. Hong reviewed plaintiff's history, observed plaintiff had scattered tenderness over the mid-low cervical paraspinals, ordered an x-ray of the cervical spine, and referred plaintiff to physical therapy. *See id*. at 304-07. Although plaintiff initially reported improved neck pain, Dr. Hong subsequently observed limited range of motion, tightness, and pain in the neck. *See id.* at 327, 346, 529. Dr. Hong also observed plaintiff had tenderness and pain in her hips and trochanter and tenderness in the back. *See id*. at 329, 346. In an insurance form dated April 22, 2014, Dr. Hong opined plaintiff had the functional capacity to perform part-time sedentary work (four hours a day) with the limitations that plaintiff could: sit for one hour at a time for four hours; stand or walk thirty minutes at a time for two hours; and lift ten pounds frequently and twenty pounds occasionally. *Id*. at 210-11. In addition, Dr. Hong opined plaintiff was limited in her ability to use her hands, perform fine finger movements, and engage in eye/hand movements repetitively. *Id.* at 211. Dr. Hong also prohibited plaintiff from climbing and engaging in repetitive twisting, bending, and stooping. *Id*. Dr. Hong cited plaintiff's limited range of motion in the neck, tenderness, pain, and fatigue as the bases for her opinion. *Id*.

Dr. Randy Richard Lehmer, a rheumatologist, treated plaintiff's rheumatoid

arthritis. Dr. Lehmer observed that plaintiff showed great improvement in joint swelling with Enbrel. *Id*. at 296, 317. Plaintiff complained of chronic neck pain and fatigue to Dr. Lehmer, who observed that imaging showed plaintiff suffered from cervical spondylosis. *See* 296, 317-18, 444. In a work status report dated March 6, 2014, Dr. Lehmer diagnosed plaintiff with rheumatoid arthritis and chronic neck pain, placed her off work through March 2015, and opined that she was disabled from her current job. *Id*. at 315.

### 2. **State Agency Physicians**

Dr. M. Mazury and Dr. M. Bayer, State Agency physicians, reviewed plaintiff's medical records and opined plaintiff had the RFC to: lift or carry twenty pounds occasionally and ten pounds frequently; stand or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; occasionally reach overhead; and frequently handle and finger bilaterally. *See id*. at 93-96, 103-05. Both physicians also opined environmental limitations. *See id*. at 96-97, 106. Dr. Mazury reviewed plaintiff's medical records from February through May 2014 and Dr. Bayer reviewed medical records through August 2014. *See id*. at 93, 103.

### 3. **The ALJ's Findings**

The ALJ determined that plaintiff had the RFC to perform light work with postural, environmental, reaching, and manipulative limitations. *Id*. at 41. In reaching that determination, the ALJ gave great weight to the opinions of the State Agency physicians because they were well-supported by the medical evidence and not inconsistent with evidence presented at the hearing level. *Id*. at 42-43. The ALJ gave no weight to the opinion of Dr. Hong because her opinion that plaintiff could only work four hours a day was inconsistent with the evidence and plaintiff's reported and demonstrated functional ability. *Id*. at 43.

### 4. The ALJ Failed to Properly Consider Dr. Hong's Opinion

The ALJ failed to properly consider Dr. Hong's opinion that plaintiff could only work four hours a day. Although the ALJ did not expressly state it, his rejection of the four-hour limitation was a rejection of Dr. Hong's sitting, standing, and walking limitations. The ALJ did not opine any sitting, standing, and walking limitations, while Dr. Hong opined plaintiff only had the functional capacity to perform sedentary work with the additional limitations of sitting for one hour at a time for four hours and standing or walking thirty minutes at a time for two hours, which appeared to the bases of the limitation to part-time work. *Compare id.* at 41 and 210.

The ALJ rejected Dr. Hong's opinion that plaintiff was only capable of part-time work because it was inconsistent with the evidence of record as a whole. *Id.* at 43. But as discussed above, the evidence in fact consistently showed that plaintiff had sitting and standing limitations. Diagnostic images show that plaintiff suffered from, among other things, multilevel degenerative disc disease and multilevel foraminal stenosis. *Id.* at 286, 308. Plaintiff underwent physical therapy for her back, hip, and neck pain. Although the physical therapy notes indicated that the goals were met, the goals were not for plaintiff to obtain full functionality but only to be able to sit for one or two hours at a time and sleep through the night. *See id.* at 338-39, 349. Further, even though plaintiff met the goal of being able to sit for two hours in 2014, her condition deteriorated and she had to undergo physical therapy again in 2015 due to increased pain. The treatment notes indicate that as of June 2015, she was incapable of sitting for long periods of time. *See id.* at 686. In short, the record supported Dr. Hong's opinion that plaintiff was only capable of working four hours a day due to her sitting, standing, and walking limitations.

1. **5. The ALJ Properly Rejected Dr. Lehmer's Opinion**

Plaintiff also contends that the ALJ failed to consider Dr. Lehmer's opinion that plaintiff was disabled from her job and was not expected to recover. P. Mem. at 9-10. The ALJ did not err.

The ALJ has a duty to consider all relevant medical evidence to reach an RFC determination. *See* 20 C.F.R. § 404.1545(a)(1) (it is the responsibility of the ALJ to reach an RFC determination by reviewing and considering all of the relevant evidence). But the ALJ is not required to discuss every piece of evidence.

Here, the record contains three treatment notes from Dr. Lehmer, only one of which was after the alleged onset date, communications between Dr. Lehmer and plaintiff prior to her trip to Japan, and a work status report completed by Dr. Lehmer. *See* AR at 296, 315-17, 427-29, 444-45. The ALJ did not discuss the treatment records which reflected that prior to the alleged onset date, plaintiff had improvement in her joint swelling with Embrel, but that she suffered from neck pain that made it difficult to work, as well as fatigue. *Id.* at 296, 317. The treatment notes also indicated that after undergoing physical therapy in 2014, plaintiff still suffered from chronic neck pain but that it became more tolerable after she stopped working because she no longer had to stare at a screen and could vary her position at will. *Id.* at 444. But as plaintiff concedes, the ALJ did not entirely ignore Dr. Lehmer's opinion. *See* P. Mem. at 9-10. Indeed, without specifying Dr. Lehmer by name, the ALJ mentioned and considered Dr. Lehmer's opinion. *See* AR at 42.

The ALJ therefore did not err. Dr. Lehmer offered no opinion other than a limited disability determination, namely, that plaintiff was disabled from her job as supervising attorney, not that she could not perform any work. *Id.* at 315-16. It was within the ALJ's purview to make the ultimate disability determination. *See* 20 C.F.R. § 404.1527(d)(1); *Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir.1999)

("[T]he opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability."). Had Dr. Lehmer offered other opinions in addition to the ultimate disability determination, the ALJ would have been required to provide specific and legitimate reasons for rejecting the opinion of a treating physician. *See Smith v. Astrue*, 2011 WL 5294848, at *4 (N.D. Cal. Nov. 3, 2011) ("Although the treating physician's opinion is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, an ALJ must provide 'specific and legitimate reasons for rejecting the opinion of the treating physician.'") (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). But here, Dr. Lehmer did not opine any functional limitations.

Accordingly, with respect to his consideration of the treating physicians' opinions, the ALJ erred only in rejecting Dr. Hong's opinion. The ALJ failed to provide clear and convincing reasons supported by substantial evidence for rejecting Dr. Hong's opinion. But the ALJ properly discounted Dr. Lehmer's opinion.

C. **The ALJ Erred at Step Two**

Plaintiff argues the ALJ erred at step two because he failed to find her migraines were a severe impairment. P. Mem. at 10-12. Specifically, plaintiff contends the evidence demonstrated that plaintiff suffered from migraines and the migraines had more than a minimal effect on her ability to work.

At step two, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 404.1520(a)(4)(ii). "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Id*. (citation and quotation

marks omitted).

Here, the ALJ determined that plaintiff's migraine headaches did not constitute a severe impairment because they did not result in any significant functional impact. AR at 40. The ALJ did not discuss any of the evidence he reviewed to reach this determination.

The ALJ's step two finding was not supported by substantial evidence. Diagnostic images indicated plaintiff suffered from impairments, including stenosis, that could cause chronic neck pain. *Id*. at 286, 308. As discussed above, the evidence shows that plaintiff indeed complained of neck pain throughout the relevant period. The evidence shows that, before and after the alleged onset date, plaintiff consistently complained of migraines resulting from her neck pain, and had a prescription for Imitrex. *See id*. at 63, 304, 327, 344, 528, 538. Although the migraines were secondary to the neck pain, given the evidence documenting the neck pain and plaintiff's testimony that the migraines would cause her to get to work late, the evidence reasonably supports a finding that plaintiff's migraines had more than a minimal effect on her ability to work.

In many instances, error at step two is harmless where, as here, the ALJ found the claimant suffered from other severe impairments. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (any error by ALJ at step two was harmless because the step was resolved in plaintiff's favor). This is particularly true where it is apparent that in assessing the RFC the ALJ properly considered the impairments that were erroneously found not severe. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (the failure to address an impairment at step two is harmless if the RFC discussed it in step four); 20 C.F.R. § 404.1545(a)(1)-(2) (an ALJ must consider all relevant evidence, including non-severe impairments, in his RFC determination). But here, the ALJ failed to account for plaintiff's migraines in his RFC determination. As such, his error at step two was not harmless.

17

Accordingly, by failing to find that plaintiff suffered from the severe impairment of migraines secondary to chronic neck pain, the ALJ erred at step two. The ALJ's finding that plaintiff's migraines were not severe was not supported by substantial evidence.

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required because the ALJ failed to properly assess plaintiff's credibility, failed to properly consider Dr. Hong's opinion, and erred at step two.

On remand, the ALJ shall reconsider plaintiff's credibility and either accept her testimony or provide clear and convincing reasons for rejecting it; reconsider Dr. Hong's opinion and either credit the opinion or provide specific and legitimate reasons supported by substantial evidence for rejecting it; and reconsider the evidence concerning the migraines. The ALJ shall then reconsider plaintiff's impairments at steps two and three, reassess plaintiff's RFC, and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: March 22, 2019

SHERI PYM
United States Magistrate Judge